911 P.2d 539

**COLONIAL LIFE & ACCIDENT INSUR-ANCE; and John T. Osborne, Plain-tiffs–Appellees,**

v.

**STATE of Arizona; Arizona Department of Administration; and J. Elliott Hibbs, its Director, Defendants–Appellants.**

**No. 1 CA–CV 93–0580.**

Court of Appeals of Arizona, Division 1, Department D.

July 11, 1995.

Reconsideration Denied Aug. 28, 1995.

Review Denied Feb. 21, 1996.*

---

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Grant Woods, Atty. Gen. by Graham Alex Turner, Asst. Atty. Gen., Phoenix, for appellants.

Rogers & Whalen, P.A. by Thomas M. Rogers and Ulrich & Kessler, P.C. by Paul G. Ulrich, Phoenix, for appellees.

## OPINION

NOYES, Presiding Judge.

Since 1986, Appellee Colonial Life & Accident Insurance Company ("Colonial") has sold insurance to state employees via pre-tax payroll deduction without having to compete for and be awarded a contract from Appellants ("the State"), as required of other insurance companies. In 1993, when the State sought to terminate this privilege, Colonial filed a special action in superior court seeking a judgment declaring that Ariz.Rev.Stat. Ann. ("A.R.S.") section 38–612(B) (Supp. 1994) exempts it from the requirements imposed by the State on other insurance companies, and seeking an injunction precluding the State from interfering with that exemption. The trial court granted declaratory and injunctive relief to Colonial. The State appealed. This Court has jurisdiction pursuant to A.R.S. section 12–2101(B) (1992).

### I.

Necessary context is provided by this abbreviated chronology:

1975: As a result of a competitive process, Colonial wins the right to sell insurance to state employees and to collect premiums through payroll deduction.

1977: A.R.S. section 38–612 is enacted and provides in pertinent part:

B. [S]tate officers or employees may authorize deductions to be made from their salaries or wages for the payment of:
1. Premiums on any health benefits, disability plans or group life plans provided for by statute and any existing insurance programs already provided by payroll deduction.

1977: Arizona Attorney General Opinion 77–217 interprets

A.R.S. section 38–612 as follows:

The language "any existing program" in A.R.S. § 38–612.B(1) "grandfathers in" insurance programs provided by payroll deduction in existence on May 31, 1977 at which time the act became effective.

There is nothing in this provision to sustain interpreting "existing programs" to mean existing programs with a fixed number of members at the effective date of the act. If the Legislature had intended such a result it could easily have stated that payroll deductions may be authorized for existing insurance programs only for those employees who are enrolled in the program before the effective date of the Act. The Legislature has not done this; therefore, we think a construction of the statute to achieve such a result is unwarranted.

Op.Ariz.Att'y Gen. 77–217.

1977–1993: The parties operate as though Op.Ariz.Att'y Gen. 77–217 correctly interprets section 38–612(B), i.e., that Colonial has been "grandfathered in" regarding the sale of new insurance to state employees via payroll deduction.

1986: The State begins to competitively bid all contracts for state employee group insurance in accordance with the provisions of the newly enacted Arizona Procurement Code (A.R.S. section 41–2501 to –2662 (Supp. 1994)). Colonial is allowed to sell new insurance to state employees via pre-tax payroll deduction without having to participate in the bidding process.

1986: The State implements a plan to comply with Internal Revenue Code section 125 (1986), which allows employees to pay group insurance premiums with pre-tax dollars. See A.R.S. § 38–651.05 (Supp.1994). This plan, called a "Cafeteria Plan," includes only competitively-bid group insurance contracts.

1986–1992: Colonial continues to sell new insurance to state employees via pre-tax payroll deduction without having competed for and been awarded a group insurance contract with the State and without having been included in the "Cafeteria Plan."

1992: The State advises that, effective October 1, 1993, Colonial will have no exemption from the competitive bid process. This lawsuit follows. To resolve the matter quickly, the parties stipulated that the trial court summarily decide the issues based on oral argument following accelerated briefing.

## II.

■ At issue is the meaning of A.R.S. section 38–612(B). When reviewing conclusions of law, this Court is not bound by the trial court's conclusions and will review such questions *de novo. Barry v. Alberty*, 173 Ariz. 387, 389, 843 P.2d 1279, 1281 (App. 1992).

The State argues that A.R.S. section 38–612(B) does not exempt Colonial from the competitive bidding requirements it imposes on all other insurance companies. The State agrees that the statute allows state employees to continue payroll deductions on existing Colonial policies, but it argues that the statute does not grant a special privilege to Colonial regarding sale of new insurance. The State argues that the trial court's interpretation of section 38–612(B) confers a special privilege on Colonial in violation of the Arizona Constitution, article IV, part 2, section 19. We agree, but we also agree that the issue is complicated because the State's 1977 interpretation of A.R.S. section 38–612(B) created the special privilege the State now argues against.

■ Opinions of the Attorney General are advisory only, *State v. Deddens*, 112 Ariz. 425, 428, 542 P.2d 1124, 1127 (1975), but if an executive office that administers a statute interprets it a certain way and acquiesces in that meaning for many years, the appellate courts will not disturb that interpretation unless it is manifestly erroneous. *Dupnik v. MacDougall*, 136 Ariz. 39, 44, 664 P.2d 189,

194 (1983). For fifteen years, the State allowed Colonial to sell insurance to state employees consistent with the privileged status conferred by Op.Ariz.Att'y Gen. 77–217. This long acquiescence is a factor weighing heavily in favor of allowing it to continue. *See id.* "Administrative construction of a statute is entitled to considerable weight in interpreting it. [Citations omitted.]" *Begay v. Graham*, 18 Ariz.App. 336, 339, 501 P.2d 964, 967 (1972). Even so, now that this 1977 interpretation has been challenged, our deference to tradition cannot blind us to the fact that this interpretation plainly confers a substantial competitive benefit on Colonial without any rational basis for doing so. The statute is not unconstitutional as written and as currently interpreted by the State, but it would be unconstitutional as interpreted by the Attorney General in 1977 and as Colonial would have us do in 1995.

■ The Arizona Constitution provides that "No local or special laws shall be enacted in any of the following cases, that is to say: ... (13) Granting to any corporation, association, or individual, any special or exclusive privileges, immunities or franchises." ARIZ. CONST. art. IV, pt. 2, § 19. This section "was passed to prevent the state legislature from bestowing favors on preferred groups or localities.... A special law applies only to certain members of a class or to an arbitrarily defined class which is not rationally related to a legitimate, legislative purpose. [Citations omitted.]" *State v. Christi*, 149 Ariz. 323, 324, 718 P.2d 487, 488 (App.1986). We do not know why the State interpreted the statute as it did in 1977, but we agree with the State's currently-expressed interpretation (in its Reply brief on appeal) that:

A.R.S. section 38–612(B) is a payroll deduction statute clearly enacted for the convenience of state employees, and no more. The statutory language authorizing the continuation of an "existing program" simply allowed an employee to continue current coverage in the event the State changed insurance providers. The Legislature did not intend to perpetually "grandfather" the marketing of Colonial, or the dozens of other life, health and disability providers in Arizona.[1]

---

1. The State's use of "dozens" is inapt. Only four

companies were potential beneficiaries of the

**536**

Colonial argues that it has no grant of privilege in perpetuity because the legislature can amend or repeal section 38–612(B) at any time. That is true, but there is no need to amend or repeal the statute: the problem is Colonial's manifestly erroneous interpretation of the statute, not the statute itself. Colonial argues that the State is asking this Court to repeal "fifteen years of benefits and convenience to state employees because Appellants suddenly disagree with A.R.S. section 38–612 or do not wish to comply with the requirements set forth therein." We respectfully suggest that the only benefit being repealed here is the one erroneously conferred on Colonial by the Attorney General in 1977. As will be explained below, state employees are in no way harmed by Colonial having to compete with the rest of the industry for the right to sell new insurance via pre-tax payroll deduction.

Colonial offers no argument why *it* is entitled to the benefits of its interpretation of section 38–612(B): rather, it argues that we should reject the State's constitutional argument because "no factual basis or legal authority is provided to support the argument." We find that Colonial's assertion of special privilege—and the judgment granted by the trial court to protect that privilege—are all the support needed for the argument that Colonial claims special legislation for which there is no rational basis. In paragraph 18 of its Complaint, Colonial claimed that "plaintiffs have been denied the privileges and benefits afforded them under A.R.S. § 38–612."

Colonial argues that the Procurement Code does not apply to the sale of insurance to state employees and the State argues that it does. On this sparse record from an accelerated and summary trial court proceeding concerning section 38–612(B), we decline to make any pronouncements about the State Procurement Code—it is not necessary to do so to decide this case. Although the trial court's minute entry contained dicta regarding the Procurement Code, the Complaint

prayed for relief and the judgment granted relief only on Colonial's interpretation of section 38–612(B). The judgment makes no declaration about the Procurement Code: it addresses only section 38–612(B). Any challenge to the Procurement Code is for another case.

### III.

We conclude that both Op.Ariz.Att'y Gen. 77–217 and the trial court gave a manifestly erroneous meaning to section 38–612(B). We conclude that section 38–612(B) protects the right of state employees to pay premiums on existing insurance policies with pre-tax payroll deduction; it does not confer a special privilege on Colonial regarding sale of new insurance to state employees. Our conclusions do not disturb relations between Colonial and existing state employee clients. As acknowledged by the State, the right of state employees to pay existing policy premiums with pre-tax payroll deduction is assured by section 38–612(B).

The judgment for Colonial is reversed. The case is remanded with directions to enter judgment for the State.

VOSS and GRANT, JJ., concur.

---

State's 1977 interpretation of the statute, and only Colonial presently claims that benefit.

