IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DAVID STAMBAUGH,
*Plaintiff/Appellant*,

*v.*

DONALD BUTLER, acting in his capacity as Director of the
Arizona Department of Agriculture; ARIZONA DEPARTMENT OF
AGRICULTURE, an agency of the State of Arizona; SUZETTE TAYLOR,
acting in her capacity as State Brand Clerk at the Arizona Department of
Agriculture; STATE OF ARIZONA; and EUREKA SPRINGS CATTLE
CO., LLC, an Arizona limited liability company and real party in interest,
*Defendants/Appellees*.

No. 1 CA-CV 14-0817
FILED 8-9-2016

Appeal from the Superior Court in Maricopa County
No. CV 2012-017523
The Honorable John Christian Rea, Judge

**AFFIRMED**

COUNSEL

Salmon Lewis & Weldon, PLC, Phoenix
By Paul R. Orme, Mark A. McGinnis, R. Jeffrey Heilman
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Aaron Thompson
*Counsel for Defendants/Appellees, Donald Butler, Suzette Taylor, Arizona Dept.
of Agriculture and State of Arizona*

## OPINION

Judge Patricia A. Orozco delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen joined, and to which Judge Kenton D. Jones dissented.

---

**O R O Z C O**, Judge:

**¶1** David Stambaugh appeals the superior court's ruling upholding the recording by Defendants Donald Butler, Suzette Taylor, the Arizona Department of Agriculture (Department) and the State of Arizona (collectively, Defendants) of the Eureka Springs Cattle Co. livestock brand. The Eureka Springs brand is identical to Stambaugh's brand, but placed in a different location on the animal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** Stambaugh is the owner in Arizona of the bar seven brand[1] applied to the left hip of his cattle. Eureka Springs owns the bar seven brand in California applied to the left rib of its cattle. Eureka Springs wanted to move its cattle from California to Arizona without rebranding its herd.[2] Therefore, Eureka Springs applied to the Department to use the bar seven brand in Arizona on the left rib.

**¶3** According to the record, the Department in the past has approved requests to record brands that are identical to other recorded brands, as long as the new application specifies that the brand will be placed on a different location of the animal (i.e., left or right ribs, hip or shoulder). When it received Eureka Springs' brand application, the Department researched potential conflicts and noted Stambaugh's existing bar seven brand. Even though the Eureka Springs brand is identical to Stambaugh's, the Department decided to accept Eureka Springs' brand for recording because its brand would be placed on a different location; Stambaugh's on the left hip of a cow and Eureka Springs' on the left rib.

---

[1] The appearance of the bar seven brand resembles -7. Stambaugh's cattle are located in Eastern Pinal County.

[2] After its brand was recorded, Eureka Springs moved its cattle into Western Graham County.

The Department also noted the Eureka Springs brand was not so similar to any other brand on the left rib that the brand could be converted or cattle could be misidentified. The Department then publicly advertised Eureka Springs' request to record its brand.

**¶4**     After learning of the Eureka Springs application, Stambaugh filed a protest. The Department denied Stambaugh's protest and issued a certificate to Eureka Springs signifying its approval and recording of the bar seven brand applied on the left ribs of cattle.

**¶5**     Stambaugh then filed suit challenging the Department's recording of Eureka Springs' bar seven brand, and the parties moved for summary judgment. The superior court granted the Defendants' motion in part, explaining that "A.R.S. § 3-1261 and related statutes give the [Department] and its employees discretion, as a matter of law, to consider the location of a brand on an animal in determining whether two brands are of the same design or figure." The superior court remanded the matter to the Department to conduct a hearing on the brand and the protest. Stambaugh timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1 and -2101.A.1 (West 2016).[3]

## DISCUSSION

**¶6**     We review the grant of summary judgment de novo and view the evidence in the light most favorable to the party against whom summary judgment was granted. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). We also review issues of statutory construction de novo. *Short v. Dewald,* 226 Ariz. 88, 93-94, ¶ 26 (App. 2010). "If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268 (1994). "However, if more than one plausible interpretation of a statute exists, we typically employ tools of statutory interpretation." *Haag v. Steinle*, 227 Ariz. 212, 214, ¶ 9 (App. 2011). Such tools include "the statute's context, its language, subject matter and historical background, its effects and consequences, and its spirit and purpose." *Id.* In addition, when "the legislature has not spoken definitively to the issue at hand, 'considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.'" *Ariz. Water Co. v. Ariz. Dep't of Water Res.*, 208 Ariz. 147, 155, ¶ 30 (2004) (citing *Chevron, U.S.A., Inc. v.*

---

[3]     We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

*Nat. Resources Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).  The Department's interpretation is not infallible, however, and courts remain the final authority in an issue of statutory construction.  *U.S. Parking Sys. v. City of Phoenix*, 160 Ariz. 210, 211 (App. 1989).

## I.  Arizona Livestock Branding Statutes

¶7          Pursuant to A.R.S. § 3-1261:

> A. Every person owning range livestock in this state shall adopt and record a brand[.]
>
> B. No two brands of the same design or figure shall be adopted or recorded, but the associate director may, in his discretion, reject and refuse to record a brand or mark similar to or conflicting with a previously adopted and recorded brand or mark.
>
> . . .
>
> G. It is unlawful to apply a recorded brand in any location on an animal except as specified on the brand registration certificate.  The application of a brand in any other location is the equivalent of the use of an unrecorded brand.

¶8          The Arizona legislature has given the Department "general supervision over the livestock interests of the state, [including] protect[ing] the livestock industry from theft."  A.R.S. § 3-1203.A.  Livestock brands help prevent theft by identifying the owners of livestock.  *See* A.R.S. §§ 3-1267.B ("The appearance upon an animal of the recorded brand of the owner as shown by the record shall be received in the courts of this state as prima facie evidence that the animal bearing the brand is the property of the owner of the recorded brand . . . ."); -1371.1 ("The question of ownership may be raised . . . [if] [t]he livestock is not branded as required by this chapter.").

¶9          The recording of a brand "shall consist of depicting a facsimile of the brand adopted . . . [and] the place upon the livestock or other animals where the brand is proposed to be used."  A.R.S. § 3-1262.A.  When the Department approves and records a brand, it issues a registration certificate, *see* A.R.S. § 3-1266, which specifies where the brand must be applied on the animal.  The Department is also authorized to issue brand books, A.R.S. § 3-1268, which identify recorded brands and note where they are to be applied to their owners' livestock.

¶10 To protect brands and the function they serve, the legislature has criminalized misconduct related to brand usage. For example, it is a crime to brand "livestock with an unrecorded, cancelled, suspended or forfeited brand[,]" A.R.S. § 3-1269.A, to brand livestock "with a brand other than the recorded brand of the owner," A.R.S. § 3-1304, or to apply a recorded brand in a location other than that specified on the brand registration certificate, A.R.S. § 3-1261.G.

## II. Analysis

¶11 The narrow issue the superior court decided is whether the Arizona livestock branding statutes grant the Department discretion to consider the location a brand is to be applied on an animal when deciding if a proposed brand is of the "same design or figure" as another under A.R.S. § 3-1261.B. Stambaugh contends that "[A.R.S.] § 3-1261.B is a plain and unambiguous directive from the Arizona Legislature that prohibits the [Department] from recording duplicate brands with the 'same design or figure,'" regardless of where on an animal a brand is to be applied. In contrast, the Department asserts that, "[g]iven A.R.S. § 3-1261(G), it is at the very least unclear whether the Legislature intended to allow the Department to consider a brand's location in determining whether the brand consists of the 'same' design or figure as an existing brand[.]" We agree with the Department that the statute is ambiguous.

¶12 In discerning the meaning and significance of the term "same design or figure" in A.R.S. § 3-1261.B, we cannot disregard the repeated references in A.R.S. § 3-1261 and surrounding statutes to the significance of the location at which a brand is approved for placement on the owner's livestock. Although Stambaugh argues the first clause of A.R.S. § 3-1261.B ("No two brands of the same design or figure shall be adopted or recorded") establishes the sole basis on which the Department is to decide whether to approve a brand, other statutes in the same chapter and article distinguish brands based on their location on livestock. As recited above, subpart G of the same statute provides that "application of a brand in any other location is the equivalent of the use of an unrecorded brand." A.R.S. § 3-1261.G. Subsection G's reference to an "unrecorded brand" indicates that an owner's choice of where a brand will be placed on the animal is part of the brand that the Department ultimately accepts and records.

¶13 Other statutes in the same chapter and article relating to branding also undercut Stambaugh's contention that we must read the first clause of A.R.S. § 3-1261.B in isolation. For example, A.R.S § 3-1262.A requires that the record of a brand must contain a designation of where the

brand is to be placed on livestock. Under A.R.S. § 3-1267.B, a brand must be applied to its recorded location to constitute prima facie evidence of ownership of the livestock. Sections 3-1262.A, -1267.B and -1261.G mandate that the designated location at which an owner applies a brand is a legally enforceable requirement that, along with the design and figure of the brand, combine to create the brand that the Department may accept for recording.[4] Additionally, the second clause of A.R.S. § 3-1261.B ("the associate director may, in his discretion, reject and refuse to record a brand or mark similar to or conflicting with a previously adopted and recorded brand") expressly grants the Department discretion in determining whether a proposed brand conflicts with one already recorded. When read in context to achieve a consistent interpretation, these statutes make clear that the Department may consider a brand's location when determining if duplicate brands are "of the same design or figure."

¶14            Our interpretation is consistent with the purpose of the Arizona livestock branding statutes. The purpose of livestock branding is to identify ownership of livestock and thereby help prevent their theft. *See* A.R.S. §§ 3-1267.B, -1203.A. Therefore, the statutes do not allow the Department to approve conflicting brands of the "same design or figure" because such brands would not then identify livestock ownership and prevent theft. It follows, then, that the Department has discretion to accept and record a brand that is similar to another already approved brand, as long as the new brand can identify livestock ownership and prevent theft. *See Hoyle v. Super. Ct.*, 161 Ariz. 224, 227 (App. 1989) ("What a statute necessarily implies is as much a part of the statute as what the statute specifically expresses."). A brand that is similar to another can be rendered distinctive if it is required to be applied in a different location than the other. Therefore, the purpose of the statutes is achieved if the Department can consider location when determining whether a proposed brand is of the same "design or figure" as a brand already recorded.

---

[4]            Brand location must also be designated on numerous documents incidental to the administration of brands. For instance, location is designated on brand applications and brand certificates, advertisements of proposed brands, bills of sale for brands, brand lease forms, and instruments of distribution if the brand is part of decedent's estate. Livestock self-inspection certificates also identify the brand's location. *See* Arizona Administrative Code R3-2-702.C.1.g.

¶15        Furthermore, evidence in the record indicates that the Department has long interpreted the branding statutes to allow it to consider the location at which brands are to be applied when it determines whether a proposed brand is of the same design or figure as a recorded brand.[5]  "In circumstances like these, in which the legislature has not spoken definitively to the issue at hand, 'considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.'" *Ariz. Water Co.*, 208 Ariz. at 155, ¶ 30 (quoting *Chevron, U.S.A., Inc.*, 467 U.S. at 844).  This is particularly true when, as here, the Department's construction of the statute is "long continued," *see City of Mesa v. Killingsworth,* 96 Ariz. 290, 296 (1964); *Long v. Dick,* 87 Ariz. 25, 28-29 (1959); and when a contrary outcome would upset settled understandings, *see Dupnick v. MacDougall*, 136 Ariz. 39, 44 (1983) ("Where there has been such a background of acquiescence in the meaning of a law unless manifestly erroneous, we will not disturb it."); *Bohannan v. Corp. Comm'n*, 82 Ariz. 299, 382 (1957) ("Uniform acquiescence of meaning, if it is not manifestly erroneous, will not be disturbed, at least in cases of doubt, for injustices are likely to result after a long period of time during which many rights will necessarily have been acquired."); *Colonial Life & Acc. Ins. v. State*, 184 Ariz. 533, 535 (App. 1995) ("[I]f an executive office that administers a statute interprets it a certain way and acquiesces in that meaning for many years, the appellate courts will not disturb that interpretation unless it is manifestly erroneous."). Deposition testimony and brand books in the record demonstrate that, for many decades, the Department has exercised discretion to approve duplicate brands as long as they are required to be applied in different locations, and we accord considerable weight to that construction of the statutes.  Based on the record before us, to now invalidate the manner in which the Department has

---

[5]        Contrary to the dissent's contention, the statute's ambiguity is not created by longstanding "misapplication" by the Department.   The ambiguity exists by virtue of the language of A.R.S. § 3-1261 and related statutes, read in context with each other.  Accordingly, we must look, inter alia, to the Department's longstanding construction of the statutes.  To do otherwise might render invalid hundreds of brands the Department accepted for recording over the past several decades based on their owners' promises to apply the brands in different locations than prior similar recorded brands were to be applied.

construed the statutes over many decades would cause havoc with untold numbers of recorded brands.[6]

¶16          Stambaugh argues that A.R.S. § 3-1261.G has no bearing on subsection B because the provisions are not codependent and do not reference each other, and because A.R.S. § 3-1262.A is "simply a procedural directive." We interpret a statute's various provisions in context with each other to achieve a consistent interpretation. *Koss Corp. v. Am. Express Co.*, 233 Ariz. 74, 79, ¶ 12 (App. 2013). Thus, although subsections A and G do not expressly reference each other, we must construe them together to achieve consistency. *See id.* Construed in that manner, A.R.S. § 3-1261.G bears on subsection B by suggesting that a brand's location is a distinguishing component of a recorded brand.

¶17          Our interpretation also does not "render[] the first and primary phrase of [A.R.S. § 3-1261.B] meaningless and nonoperational," as Stambaugh asserts. Read as a whole, the statutes prohibit the Department from approving brands of the same design or figure because such brands do not identify livestock ownership and prevent theft. *See* A.R.S. §§ 3-1261.B; -1267.B; -1203.A. Two identical brands applied at the same location on an animal are "of the same design or figure," and are prohibited because they cannot identify ownership or prevent theft. *Id.* But the converse also is true: the Department's longstanding practice of accepting similar brands that are applied in different locations on their owners' livestock serves the statutes' purpose of identifying ownership and preventing theft.

## CONCLUSION

¶18          For the foregoing reasons, we affirm the superior court's judgment.

**J O N E S**, Judge, dissenting:

¶19          The unambiguous language of a statute is not made ambiguous simply by virtue of its longstanding misapplication. In Arizona, persons owning range livestock are required to adopt and record a brand with the Arizona Department of Agriculture (the Department), which they

---

[6]          Brand books from as early as 1908 list brands accepted for recording that are similar in appearance but approved for application at different locations on their owners' livestock.

may then affix to their livestock to provide evidence of ownership. A.R.S. §§ 3-1261(A), -1267(B), -1371(1), (4). Arizona Revised Statutes (A.R.S.) § 3-1261(B) unequivocally states, "[n]o two brands of the same design or figure shall be adopted or recorded."

¶20 Here, the parties agree the bar seven brands issued by the Department to both Stambaugh and Eureka Springs are identical; Eureka Springs argues, however, its placement of the brand on the left rib rather than the left hip of its livestock makes the brand different in "design or figure" within the meaning of A.R.S. § 3-1261(B). The fact that other portions of A.R.S. § 3-1261 regulate the location of a brand does not modify the unambiguously plain and ordinary language of A.R.S. § 3-1261(B). *See SFPP, L.P. v. Ariz. Dep't of Revenue*, 210 Ariz. 151, 155, ¶ 19 (App. 2005) ("When a term is undefined by the legislature, we strive to apply the plain and ordinary meaning of the words used unless a contrary intent is expressed by the legislature.") (citing *State v. Hoggatt*, 199 Ariz. 440, 443, ¶ 8 (App. 2001)). We look to an established, widely respected dictionary to deduce a word's plain and ordinary meaning. *See Sierra Tucson, Inc. v. Pima Cnty.*, 178 Ariz. 215, 219 (App. 1994) (citing *State v. Wise*, 137 Ariz. 468, 470 (1983)). The phrase "design or figure" excludes consideration of placement; both "design" and "figure" are defined to include only a pattern, shape, or pictorial representation. *See* The American Heritage Dictionary of the English Language 491, 656 (5th ed. 2011) (defining "design" as "a drawing or sketch," "[a] graphic representation," or "[a]n ornamental pattern"; and defining "figure" as "[a] written or printed symbol representing something other than a letter," "[a] pictorial or sculptural representation," or "[a]n illustration printed from an engraved plate or block").

¶21 Those statutes regulating placement of the brand are not rendered meaningless by the exclusion of a brand's location from the analysis of whether two brands are "of the same design or figure." The requirement that a particular brand be placed in a specific location provides an additional measure of protection to the owner of the livestock by requiring, first, the application of a particular, unique design previously approved by and recorded with the Department, and second, that the particular, unique design be applied to the animal in a specific location.[7]

---

[7] For this reason, I disagree with the majority's assertion that its interpretation furthers the purpose of Arizona's livestock branding statutes — "to identify ownership of livestock and thereby help prevent their theft." *See supra* ¶ 14. The majority merges two separate and meaningful

The dual requirements also assist anyone seeking to identify the owner of livestock by directing him to a specific location for the evidence of ownership.

¶22　　　Additionally, although the Department is granted some discretion in determining whether brands are "of the same design or figure," that discretion has been narrowly defined by the legislature. Specifically, the Department may exercise its discretion only to "reject and refuse to record a brand or mark similar to or conflicting with a previously adopted and recorded brand or mark."　A.R.S. § 3-1261(B).　This limited discretion does not allow the Department to accept and record identical brands simply because they are to be placed in different locations.　Instead, it only allows the Department to be *more restrictive* than otherwise stated, and reject brands that are not even necessarily "the same," but merely "similar."

¶23　　　The Department is not afforded deference where its implementation of legislative directives contravenes their clear language. *See Ariz. Water Co. v. Ariz. Dep't of Water Res.*, 208 Ariz. 147, 155, ¶ 31 (2004) (noting judicial deference is granted to an administrative agency's interpretation of a statute where the "statutory language is . . . not dispositive"); *Kobold v. Aetna Life Ins.*, 239 Ariz. 259, 262, ¶9 (App. 2016) (noting an agency's interpretation is granted deference only if "the statute is silent or ambiguous with respect to the specific issue" and "the agency's interpretation is reasonable") (first quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984); then citing *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001)); *Dewitt v. Magma Copper Co.*, 16 Ariz. App. 305, 308 (1972) (holding a "prior [administrative] construction is not determinative [where] the statutes contain a sufficiently clear statement of legislative intent").　Indeed, "our deference to tradition cannot blind us to the fact" that, now that the Department's practice has been challenged, it does not conform to the statute.　*Colonial Life*, 184 Ariz. at 535; *see also Golder v. Dep't of Revenue, State Bd. of Tax Appeals*, 123 Ariz. 260, 264 (1979) ("No case law exists, nor any logic which would support the perpetuation of faulty administrative proceedings merely for the sake of uniformity.").　Because the statutory language is plain and unambiguous, we must apply it as written.　*Tobel v. State, Ariz. Dep't of Pub. Safety*, 189 Ariz. 168, 174 (App.

components of livestock identification — the unique brand and its specific location — and then ultimately disregards the requirement that the brands be unique to the owners, leaving only the location of the brand to fulfill the statutes' purpose.

1997) (quoting *Chaparral Dev. v. RMED Int'l, Inc.*, 170 Ariz. 309, 311 (App. 1991)). The Department's contrary interpretation of an unambiguous statute, while long-held, is manifestly erroneous.

**¶24** Under the plain and unambiguous language of A.R.S. § 3-1261(B), the Department did not have discretion to approve Eureka Springs' brand — the bar seven — because its "design or figure" is identical to Stambaugh's previously recorded bar seven brand. I have no doubt that both the Department and the cattle growers are capable of distinguishing between a cow with a bar seven branded on its left hip and a cow with a bar seven branded on its left rib. But that is not the question presented here. The language of the statute simply does not permit the Department to issue the identical bar seven brand to two entities. And while everyone but Stambaugh may be comfortable with a course of practice at odds with the language of the statute, it is solely within the purview of the legislature, rather than the courts, to correct the discord between the language of the statute and its longstanding, but inappropriate, application.

**¶25** The Department has violated the clear and unambiguous language of A.R.S. § 3-1261(B) by approving Eureka Springs' application for a bar seven brand identical to that previously approved and recorded for Stambaugh's use. I would reverse the order of the superior court and direct the entry of judgment in favor of Stambaugh.



Ruth A. Willingham · Clerk of the Court
FILED: AA