OPINION
OROZCO, Judge:
¶ 1 David Stambaugh appeals the superior court’s ruling upholding the recording by Defendants Donald Butler, Suzette Taylor, the Atizona Department of Agriculture (Department) and the State of Arizona (collectively, Defendants) of the Eureka Springs Cattle Co. livestock brand. The Eureka Springs brand is identical to Stambaugh’s brand, but placed in a different location on the animal. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2 Stambaugh is the owner in Arizona of the bar seven brand[1] applied to the left hip of his cattle. Eureka Springs owns the bar seven brand in California applied to the left rib of its cattle. Eureka Springs wanted to move its cattle from California to Arizona without rebranding its herd.[2] Therefore, Eureka Springs applied to the Department to use the bar seven brand in Arizona on the left rib.
¶3 According to the record, the Department in the past has approved requests to record brands that are identical to other recorded brands, as long as the new application specifies that the brand will be placed on a different location of the animal (i.e., left or right ribs, hip or shoulder). When it received Eureka Springs’ brand application, the Department researched potential conflicts and noted Stambaugh’s existing bar seven brand. Even though the Eureka Springs brand is *355 identical to Stambaugh’s, the Department decided to accept Eureka Springs’ brand for recording because its brand would be placed on a different location; Stambaugh’s on the left hip of a cow and Eureka Springs’ on the left rib. The Department also noted the Eureka Springs brand was not so similar to any other brand on the left rib that the brand could be converted or cattle could be misidentifíed. The Department then publicly advertised Eureka Springs’ request to record its brand.
¶ 4 After learning of the Eureka Springs application, Stambaugh filed a protest. The Department denied Stambaugh’s protest and issued a certifícate to Eureka Springs signifying its approval and recording of the bar seven brand applied on the left ribs of cattle.
¶ 5 Stambaugh then filed suit challenging the Department’s recording of Eureka Springs’ bar seven brand, and the parties moved for summary judgment. The superior court granted the Defendants’ motion in part, explaining that “A.R.S. § 3-1261 and related statutes give the [Department] and its employees discretion, as a matter of law, to consider the location of a brand on an animal in determining whether two brands are of the same design or figure.” The superior court remanded the matter to the Department to conduct a hearing on the brand and the protest. Stambaugh timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1 and -2101.A.1 (West 2016).[3]
DISCUSSION
¶6 We review the grant of summary judgment de novo and view the evidence in the light most favorable to the party against whom summary judgment was granted. Andrews v. Blake, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7 (2003). We also review issues of statutory construction de novo. Short v. Dewald, 226 Ariz. 88, 93-94, ¶ 26, 244 P.3d 92 (App. 2010). “If a statute’s language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation.” Hayes v. Cont’l Ins. Co., 178 Ariz. 264, 268, 872 P.2d 668 (1994). “However, if more than one plausible interpretation of a statute exists, we typically employ tools of statutory interpretation.” Haag v. Steinle, 227 Ariz. 212, 214, ¶ 9, 255 P.3d 1016 (App. 2011). Such tools include “the statute’s context, its language, subject matter and historical background, its effects and consequences, and its spirit and purpose.” Id. In addition, when “the legislature has not spoken definitively to the issue at hand, ‘considerable weight should be accorded to an executive department’s construction of a statutory scheme it is entrusted to administer.’ ” Ariz. Water Co. v. Ariz. Dep't of Water Res., 208 Ariz. 147, 155, ¶ 30, 91 P.3d 990 (2004) (citing Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The Department’s interpretation is not infallible, however, and courts remain the final authority in an issue of statutory construction. U.S. Parking Sys. v. City of Phoenix, 160 Ariz. 210, 211, 772 P.2d 33 (App. 1989).
I. Arizona Livestock Branding Statutes
¶ 7 Pursuant to A.R.S. § 3-1261:
A Every person owning range livestock in this state shall adopt and record a brand[.]
B. No two brands of the same design or figure shall be adopted or recorded, but the associate director may, in his discretion, reject and refuse to record a brand or mark similar to or conflicting with a previously adopted and recorded brand or mark.
[[Image here]]
G. It is unlawful to apply a recorded brand in any location on an animal except as specified on the brand registration certificate. The application of a brand in any other location is the equivalent of the use of an unrecorded brand.
¶ 8 The Arizona legislature has given the Department “general supervision over the livestock interests of the state, [including] *356 protecting] the livestock industry from theft.” A.R.S. § 3-1203.A. Livestock brands help prevent theft by identifying the owners of livestock. See A.R.S. §§ 3-1267.B (“The appearance upon an animal of the recorded brand of the owner as shown by the record shall be received in the courts of this state as prima facie evidence that the animal bearing the brand is the property of the owner of the recorded brand-”); -1371.1 (“The question of ownership may be raised .., [if] [t]he livestock is not branded as required by this chapter.”).
¶ 9 The recording of a brand “shall consist of depicting a facsimile of the brand adopted ... [and] the place upon the livestock or other animals where the brand is proposed to be used.” A.R.S. § 3-1262.A. When the Department approves and records a brand, it issues a registration certificate, see A.R.S. § 3-1266, which specifies where the brand must be applied on the animal. The Department is also authorized to issue brand books, A.R.S. § 3-1268, which identify recorded brands and note where they are to be applied to their owners’ livestock.
¶ 10 To protect brands and the function they serve, the legislature has criminalized misconduct related to brand usage. For example, it is a crime to brand “livestock with an unrecorded, cancelled, suspended or forfeited brand[,]” A.R.S. § 3-1269.A, to brand livestock “with a brand other than the recorded brand of the owner,” A.R.S. § 3-1304, or to apply a recorded brand in a location other than that specified on the brand registration certificate, A.R.S. § 3-1261.G.
II. Analysis
¶ 11 The narrow issue the superior court decided is whether the Arizona livestock branding statutes grant the Department discretion to consider the location a brand is to be applied on an animal when deciding if a proposed brand is of the “same design or figure” as another under A.R.S. § 3-1261.B. Stambaugh contends that “[A.R.S.] § 3-1261.B is a plain and unambiguous directive from the Arizona Legislature that prohibits the [Department] from recording duplicate brands with the ‘same design or figure,’ ” regardless of where on an animal a brand is to be applied. In contrast, the Department asserts that, “[g]iven A.R.S. § 3-1261(G), it is at the very least unclear whether the Legislature intended to allow the Department to consider a brand’s location in determining whether the brand consists of the ‘same’ design or figure as an existing brand[.]” We agree with the Department that the statute is ambiguous.
¶ 12 In discerning the meaning and significance of the term “same design or figure” in A.R.S. § 3-1261.B, we cannot disregard the repeated references in A.R.S. § 3-1261 and surrounding statutes to the significance of the location at which a brand is approved for placement on the owner’s livestock. Although Stambaugh argues the first clause of A.R.S. § 3-1261.B (“No two brands of the same design or figure shall be adopted or recorded”) establishes the sole basis on which the Department is to decide whether to approve a brand, other statutes in the same chapter and article distinguish brands based on their location on livestock. As recited above, sub-part G of the same statute provides that “application of a brand in any other location is the equivalent of the use of an unrecorded brand.” A.R.S. § 3-1261.G. Subsection G’s reference to an “unrecorded brand” indicates that an owner’s choice of where a brand will be placed on the animal is part of the brand that the Department ultimately accepts and records.
¶ 13 Other statutes in the same chapter and article relating to branding also undercut Stambaugh’s contention that we must read the first clause of A.R.S. § 3-1261.B in isolation. For example, A.R.S § 3-1262.A requires that the record of a brand must contain a designation of where the brand is to be placed on livestock. Under A.R.S. § 3-1267.B, a brand must be applied to its recorded location to constitute prima facie evidence of ownership of the livestock. Sections 3-1262.A, -1267.B and -1261.G mandate that the designated location at which an owner applies a brand is a legally enforceable requirement that, along with the design and figure of the brand, combine to create the brand that the Department may accept for *357 recording.[4] Additionally, the second clause of A.R.S. § 3-1261.B (“the associate director may, in his discretion, reject and refuse to record a brand or mark similar to or conflicting with a previously adopted and recorded brand”) expressly grants the Department discretion in determining whether a proposed brand conflicts with one already recorded. When read in context to achieve a consistent interpretation, these statutes make clear that the Department may consider a brand’s location when determining if duplicate brands are “of the same design or figure.”
¶ 14 Our interpretation is consistent with the purpose of the Arizona livestock branding statutes. The purpose of livestock branding is to identify ownership of livestock and thereby help prevent their theft. See A.R.S. §§ 3-1267.B, -1203.A. Therefore, the statutes do not allow the Department to approve conflicting brands of the “same design or figure” because such brands would not then identify livestock ownership and prevent theft. It follows, then, that the Department has discretion to accept and record a brand that is similar to another already approved brand, as long as the new brand can identify livestock ownership and prevent theft. See Hoyle v. Super. Ct., 161 Ariz. 224, 227, 778 P.2d 259 (App. 1989) (“What a statute necessarily implies is as much a part of the statute as what the statute specifically expresses.”). A brand that is similar to another can be rendered distinctive if it is required to be applied in a different location than the other. Therefore, the purpose of the statutes is achieved if the Department can consider location when determining whether a proposed brand is of the same “design or figure” as a brand already recorded,
¶ 15 Furthermore, evidence in the record indicates that the Department has long interpreted the branding statutes to allow it to consider the location at which brands are to be applied when it determines whether a proposed brand is of the same design or figure as a recorded brand.[5] “In circumstances like these, in which the legislature has not spoken definitively to the issue at hand, ‘considerable weight should be accorded to an executive department’s construction of a statutory scheme it is entrusted to administer.’ ” Ariz. Water Co., 208 Ariz. at 155, ¶ 30, 91 P.3d 990 (quoting Chevron, U.S.A., Inc., 467 U.S. at 844, 104 S.Ct. 2778). This is particularly true when, as here, the Department’s construction of the statute is “long continued,” see City of Mesa v. Killingsworth, 96 Ariz. 290, 296, 394 P.2d 410 (1964); Long v. Dick, 87 Ariz. 25, 28-29, 347 P.2d 581 (1959); and when a contrary outcome would upset settled understandings, see Dupnik v. MacDougall, 136 Ariz. 39, 44, 664 P.2d 189 (1983) (“Where there has been such a background of acquiescence in the meaning of a law unless manifestly erroneous, we will not disturb it.”); Bohannan v. Corp. Comm’n, 82 Ariz. 299, 382, 313 P.2d 379 (1957) (“Uniform acquiescence of meaning, if it is not manifestly erroneous, will not be disturbed, at least in cases of doubt, for injustices are likely to result after a long period of time during which many rights will necessarily have been acquired.”); Colonial Life & Acc. Ins. v. State, 184 Ariz. 533, 535, 911 P.2d 539 (App. 1995) (“[I]f an executive office that administers a statute interprets it a certain way and acquiesces in that meaning for many years, the appellate courts will not disturb that interpretation unless it is manifestly erroneous.”). Deposition testimony and brand books in the record demonstrate that, for many *358 decades, the Department has exercised discretion to approve duplicate brands as long as they are required to be applied in different locations, and we accord considerable weight to that construction of the statutes. Based on the record before us, to now invalidate the manner in which the Department has construed the statutes over many decades would cause havoc with untold numbers of recorded brands.[6]
¶ 16 Stambaugh argues that A.R.S. § 3-1261.G has no bearing on subsection B because the provisions are not codependent and do not reference each other, and because A.R.S. § 3-1262.A is “simply a procedural directive.” We interpret a statute’s various provisions in context with each other to achieve a consistent interpretation. Koss Corp. v. Am. Express Co., 233 Ariz. 74, 79, ¶ 12, 309 P.3d 898 (App. 2013). Thus, although subsections A and G do not expressly reference each other, we must construe them together to achieve consistency. See id. Construed in that manner, AR.S. § 3-1261.G bears on subsection B by suggesting that a brand’s location is a distinguishing component of a recorded brand.
¶ 17 Our interpretation also does not “render[ ] the first and primary phrase of [A.R.S. § 3-1261.B] meaningless and nonoperational,” as Stambaugh asserts. Read as a whole, the statutes prohibit the Department from approving brands of the same design or figure because such brands do not identify livestock ownership and prevent theft. See A.R.S. §§ 3-1261.B; -1267.B; -1203.A Two identical brands applied at the same location on an animal are “of the same design or figure,” and are prohibited because they cannot identify ownership or prevent theft. Id. But the converse also is true: the Department’s longstanding practice of accepting similar brands that are applied in different locations on their owners’ livestock serves the statutes’ purpose of identifying ownership and preventing theft.
CONCLUSION
¶ 18 For the foregoing reasons, we affirm the superior court’s judgment.

. The appearance of the bar seven brand resembles -7. Stambaugh's cattle are located in Eastern Pinal County.

. After its brand was recorded, Eureka Springs moved its cattle into Western Graham County.

. We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

. Brand location must also be designated on numerous documents incidental to the administration of brands. For instance, location is designated on brand applications and brand certificates, advertisements of proposed brands, bills of sale for brands, brand lease forms, and instruments of distribution if the brand is part of decedent’s estate. Livestock self-inspection certificates also identify the brand's location. See Arizona Administrative Code R3-2-702.C.l.g.

. Contrary to the dissent’s contention, the statute's ambiguity is not created by longstanding "misapplication” by the Department. The ambiguity exists by virtue of the language of A.R.S. § 3-1261 and related statutes, read in context with each other. Accordingly, we must look, inter alia, to the Department’s longstanding construction of the statutes. To do otherwise might render invalid hundreds of brands the Department accepted for recording over the past several decades based on their owners' promises to apply the brands in different locations than prior similar recorded brands were to be applied.

. Brand books from as early as 1908 list brands accepted for recording that are similar in appearance but approved for application at different locations on their owners' livestock.