119 P.3d 477

**NATIONAL BROKER ASSOCIATES, INC., a Florida corporation, Plaintiff, Counterdefendant–Appellant,**

v.

**MARLYN NUTRACEUTICALS, INC., an Arizona corporation, Defendant, Counterclaimant–Appellee.**

Nos. 1 CA–CV 03–0810, 1 CA–CV 04–0534.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 13, 2005.

Review Denied March 14, 2006.

Jeffrey M. Proper, Phoenix, and Howard J. Weinstein, Scottsdale, Attorneys for Plaintiff, Counterdefendant–Appellant.

McCarthy, Holthus, Levine By Paul M. Levine, Phoenix, Attorneys for Defendant, Counterclaimant–Appellee.

## OPINION

IRVINE, Judge.

¶ 1 Appellant, National Broker Associates, Inc. ("NBA"), appeals from the trial court's orders preventing it from presenting witness testimony at trial to support its damages claim, dismissing its case with prejudice, and awarding attorneys' fees and costs in favor of appellee, Marlyn Nutraceuticals, Inc. ("Marlyn"). For the following reasons, we affirm all of the trial court's rulings.

### FACTS AND PROCEDURAL HISTORY

¶ 2 NBA is a Florida corporation with an office located in Scottsdale, Arizona. Marlyn is also an Arizona corporation with an office located in Scottsdale, Arizona. On March 20, 1998, Marlyn hired NBA to manage its sales for two Marlyn products: Wobenzym Formula "50" and 4 Hair. The parties also agreed that NBA might manage additional products in the future. Paragraph ten of the agreement states, in pertinent part, that "NBA [is] to receive as a management fee, $5,000.00 per month plus 3% of net invoice sales."

¶ 3 NBA filed its complaint on March 15, 2000 alleging breach of contract. In support of its cause of action, NBA claimed that Marlyn did not provide it with product literature or samples for the purpose of marketing the products and that Marlyn stopped paying the management fee of $5,000.00 per month after October 1, 1998. It further alleged that, as a "result of [Marlyn's] breach of its contract with [NBA], [NBA] suffered damage and loss including ... management fees totaling $85,000.00 and 3% of the net sales of [Marlyn's] product in an amount to be proven at trial." Marlyn answered the complaint and asserted a claim for attorneys' fees and costs incurred.

¶ 4 In NBA's June 2000 initial disclosure statement, NBA informed Marlyn that it in-

tended to call NBA's president, Mr. Harold Beatty ("Beatty"), as a witness to testify to, among other things, the damages that NBA incurred by Marlyn's alleged breach. Beatty's address was given as NBA's counsel's address in Arizona, even though Beatty's residence was in Missouri. Beatty was deposed on October 31, 2000 in Phoenix, Arizona. Gaylord "Buck" Prestidge ("Prestidge"), another witness for NBA, was deposed on September 19, 2000 in Phoenix, Arizona.

¶ 5 On July 1, 2002, NBA filed a motion for leave to amend the complaint with a proposed First Amended Complaint. On July 26, the trial court issued an order stating that it "reluctantly grants [NBA's] Motion to Amend its complaint ...," and added that "if [Marlyn] require[s] additional time to do discovery it will be granted and the trial date and motion in limine date will be vacated." Trial was subsequently set for October 6, 2003.

¶ 6 NBA's damage expert, Donald R. Bays ("Bays"), submitted his Report on Damages (the "Bays Report") on May 30, 2003 and was deposed on August 1, 2003. In his report, Bays relied on sales data provided by Beatty to calculate damages.

¶ 7 In June 2003, several discovery issues arose. Marlyn did not receive the Bays Report until June 6, 2003. Marlyn also had difficulty obtaining documents from NBA that were referred to in the Bays Report. NBA sought sanctions from the trial court based on its allegation that Marlyn had violated its discovery obligations and, specifically, altered or destroyed its sales records. Marlyn asserted that the accusations were speculative and the trial court ordered that the issue be set aside and argued at trial.

¶ 8 After receiving the Bays Report, Marlyn gave notice on July 3, 2003 to redepose Beatty and Prestidge at the office of Marlyn's counsel in Phoenix. Marlyn sent the notice to Beatty in Scottsdale, care of NBA's counsel. NBA's counsel refused to agree to the deposition, requesting that Marlyn's counsel "[s]top ignoring the rules and aggravating me at the same time" and stating that Marlyn had to seek permission from the court before deposing a witness for the second time.

¶ 9 On August 1, 2003, Marlyn filed its Motion to Compel, seeking to compel the depositions of Beatty and possibly Prestidge regarding the sales data used by Bays to create the Bays Report. In its motion, Marlyn requested that Bays be precluded from testifying as an expert witness if Beatty's deposition was not permitted. On August 6, 2003, Marlyn sent a letter to NBA's counsel stating: "Please advise the status of the deposition for Harold Beatty. It is imperative that the deposition proceed as soon as possible." On August 8, 2003, NBA filed its Response to the Motion to Compel, arguing that deposing Beatty was inappropriate and further stating "[i]t takes time because presently Mr. Beatty is in Orland [sic], Florida, but it is forthcoming." NBA's response did not dispute that the deposition was to take place in Arizona.

¶ 10 At the August 13, 2003 hearing on the Motion to Compel, the trial court granted Marlyn's Motion to Compel and ordered that Beatty be redeposed only on the sales data provided to Bays. The trial court subsequently awarded attorneys' fees to Marlyn for its Motion to Compel in the amount of $2,336.00. In a follow-up letter to NBA's counsel sent on August 13, 2003, Marlyn's counsel wrote, "I will work with you in scheduling Mr. Beatty's deposition. However, I will not agree to take his deposition by telephone. Please immediately contact me as soon as you know Mr. Beatty's availability."

¶ 11 Counsel discussed the Beatty deposition again at an August 22, 2003 hearing regarding production of documents. NBA's counsel advised the trial court that Beatty lived in Missouri and was presently out of town. NBA's counsel further requested a telephonic deposition and stated that NBA was not requiring that Beatty be deposed in Missouri. Marlyn's counsel asked the court for an in-person deposition and further requested "an order that Mr. Beatty appear for deposition within the next ten days . . . ." The trial court ordered that Beatty's deposition be taken in person in Arizona and that Marlyn "give him 10 days notice." Marlyn's counsel then discussed with the trial court "what 10 days is from today. It strikes me

as probably a week from Monday or Tuesday." August 22, 2003 was a Friday. NBA's counsel made no comment.

¶ 12 On August 22, 2003, Marlyn gave notice to NBA's counsel and Beatty at the Scottsdale address that the deposition was scheduled for September 3, 2003 at the office of Marlyn's counsel in Arizona. On August 27, 2003, NBA's counsel stated that Beatty would not appear for the September 3, 2003 deposition because Beatty was presently out of town and would continue to be out of town until September 8, 2003. NBA's counsel also informed Marlyn's counsel of his intent to seek a reversal of the trial court's August 22, 2003 decision. In addition, NBA's counsel stated that the October 6, 2003 trial date would be vacated because it fell on a religious holiday and asked Marlyn's counsel to contact him to reschedule. Marlyn's counsel wrote to NBA's counsel on August 29, 2003, stating:

> I am in receipt of your August 27, 2003 letters. Since receipt of these letters, I have left four messages on your voice mail and have not received a return phone call.
>
> With respect to Mr. Beatty's deposition, unless you contact me by 1:00 p.m. today and we agree to reschedule Mr. Beatty's deposition, I expect him to appear on September 3, 2003 at 10:00 a.m. The Court ordered Mr. Beatty's deposition and I noticed his deposition consistent with the Court's ruling. I will do everything I can to cooperate, but your failure to communicate with me regarding Mr. Beatty's deposition leaves me no choice but to confirm his deposition on Wednesday, September 3, 2003 at 10:00 a.m. If Mr. Beatty does not appear, I will advise the Court and seek appropriate sanctions. Furthermore, the documents responsive to the Request for Production of Documents must be produced by Tuesday, September 2, 2003. I am not trying to be difficult ..., but you have not returned any of my phone messages and we are approximately five weeks away from trial. As you know, it may also be necessary to take Mr. Prestidge's deposition. I will not know that until I take Mr. Beatty's deposition.

> . . . .

> I urge you to contact me as soon as possible. I am leaving the office early today and will not be available again until Tuesday, September 2, 2003. Please contact me immediately.

¶ 13 As mentioned in the letter, Marlyn's counsel left several voice messages for NBA's counsel in the week preceding the deposition, none of which were returned, but neither NBA's counsel nor Beatty appeared for the deposition scheduled on September 3, 2003.

¶ 14 Marlyn filed its Motion for Sanctions on September 5, 2003, citing NBA's failure to produce Beatty to be deposed and failure to produce documents. In its motion, Marlyn requested that the trial court preclude any testimony by either Beatty or Bays with regard to sales data or the Bays Report because it was based on Beatty's sales data.

¶ 15 Marlyn's counsel sent a letter to NBA's counsel on September 12, 2003 regarding Beatty's deposition. On September 16, 2003, Marlyn's counsel sent another letter to NBA's counsel with regard to Beatty's deposition and asked NBA's counsel to contact him. After the September 16, 2003 letter was drafted and Marlyn's counsel had made numerous attempts to contact NBA's counsel, NBA's counsel called, but did not provide any indication as to when the deposition would take place.

¶ 16 In its Response to Marlyn's Motion for Sanctions, NBA raised the issue that the deposition was not properly scheduled pursuant to Rule 6(a), Arizona Rules of Civil Procedure, and that it was improper to require Beatty to be deposed in Arizona. The trial court granted Marlyn's Motion for Sanctions, stating:

> As pointed out by defense counsel during the oral argument on the Motion for Sanctions, if Plaintiff took issue with any of the Court's prior orders, he had remedies available to him. He could have filed a Motion for Reconsideration if he believed that the Court erred in any of its rulings. Further, Plaintiff's counsel could have filed a Motion for Protective Order after receiving the Notice of Deposition of Mr. Beatty

if he believed it had been prematurely set or if he believed this Court had no authority to order his deposition to take place in Arizona. Additionally, if he believed the Court's orders were unreasonable, he could have filed a Petition for Special Action with the Court of Appeals to seek review of those orders by a higher court.

Despite the availability of various legal remedies, Plaintiff did nothing. He simply ignored the Court's orders regarding producing documents to Defendant, and he did not produce Mr. Beatty for his deposition. The Court finds and determines that there was no valid reason for Plaintiff to ignore this Court's orders in regard to the production of documents and in regard to producing Mr. Beatty at his deposition.

As a sanction the court ordered that NBA was precluded from offering "any testimony by any witness, including, but not limited to, Harold Beatty ... or Mr. Bays' Report (which relies in its entirety on Mr. Beatty's Report)."

¶ 17 Based on NBA's counsel's oral statement that the sanctions prevented NBA from proving any damages, the trial court agreed to NBA's request that the remaining claims be involuntarily dismissed. NBA's counsel informed the court that the dismissal would fall "within the parameters of Rule 54(b) of the Arizona Rules of Civil Procedure" and he would appeal the case "following the signing of the order." Marlyn had no objection to the dismissal, but asked the court to "reserve jurisdiction to determine the issue of attorney's fees" in its favor. The signed minute entry filed on October 13, 2003 specified that the "Court signs this minute entry Order as the formal Judgment and Order of Dismissal" and the "Court will retain jurisdiction to hear and determine any claims re: attorney's fees."

¶ 18 Marlyn filed its request for attorneys' fees relating to the motion for sanctions on October 3, 2003. NBA did not object. On October 23, 2003, the trial court entered judgment in favor of Marlyn awarding $13,238.20 in fees. NBA timely filed its notice from the October 13 and October 23 rulings. This court docketed the notice of appeal as case number CV 03-0810.

¶ 19 On November 20, 2003, Marlyn filed an application for an award of attorneys' fees for defending the merits of the case. On the same day it filed a statement requesting an award of costs incurred in defending the case. NBA opposed the requests on the ground that the earlier signed order ended the case so the trial court could not consider the claims for fees and costs. NBA also argued that the requests were untimely because they were filed outside the time period allowed by statute or rule. Marlyn replied that the trial court expressly retained jurisdiction to decide the attorney fee claim and the trial court may extend the time for filing claims. Without addressing NBA's objections, the trial court granted Marlyn $25,882.56 in fees and $1,325 of costs. After the court entered the award as a judgment, NBA filed a second notice of appeal. This court docketed this case as case number CV 04-0534.

¶ 20 On our own motion, we consolidated the two appeals for decision.

## DISCUSSION

¶ 21 NBA argues in No. 03-0810 that: (1) the trial court abused its discretion by imposing sanctions because Marlyn failed to timely and properly notice Beatty's deposition; (2) the trial court abused its discretion when it required that Beatty, a resident of Missouri, be deposed in Arizona; (3) the trial court abused its discretion when it imposed sanctions that resulted in involuntary dismissal of the case without an evidentiary hearing; (4) the trial court erred when it awarded attorneys' fees to Marlyn; and (5) the trial court erred when it awarded attorneys' fees and costs more than fifteen days after the dismissal. In No. 04-0534, NBA argues that (1) the trial court erred when it awarded attorneys' fees because the application was not filed within twenty days from the decision pursuant to Rule 54(g) or fifteen days from the entry of judgment pursuant to Rule 59($l$), and (2) costs could not be awarded because the claim was filed more than ten days after entry of judgment in violation of Arizona Revised Statutes ("A.R.S.") section

12–346 (2003) and Rule 54(f). For the following reasons, we affirm.

### A. Timeliness of Notice for Deposition

¶ 22 NBA argues that the notice of deposition was improper because it gave eleven calendar days' notice, but the rules require at least ten business days' notice. Rule 30(b)(1), Arizona Rules of Civil Procedure, states that a party is entitled to ten days' notice prior to taking a deposition in the absence of a court order or stipulation by the parties agreeing to a shorter time for notice. Rule 6(a), Arizona Rules of Civil Procedure, entitled "Computation," provides, in pertinent part:

> In computing any period of time prescribed or allowed by these rules, by any local rules, by order of court, or by any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included. When the period of time prescribed or allowed ... is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall not be included in the computation. When that period of time is 11 days or more, intermediate Saturdays, Sundays and legal holidays shall be included in the computation. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday or a legal holiday.

Construing Rules 30(b)(1) and 6(a) together, we conclude that intermediate Saturdays, Sundays and legal holidays shall not be included in the ten days notice required for a deposition. Therefore, NBA is correct that a party is generally entitled to ten business days notice.

¶ 23 The general rule, however, does not apply if the trial court exercises its authority under Rule 30(b)(3) to "enlarge or shorten the time for taking the deposition" for cause. Our review of the record shows that the trial court did so. On August 22, 2003, the trial court ordered Marlyn's counsel to give notice for Beatty's deposition to take place in Arizona and "give [Beatty] ten days notice." Read in context, the discussion between the court and Marlyn's counsel during that hearing, in the presence of NBA's counsel, shows that Marlyn and the trial court understood that they were talking about ten calendar days. Although the trial court never formally invoked its authority under Rule 30(b)(3), we do not believe such formality is required when all parties are present in open court and the court's statements are subject to immediate clarification.

¶ 24 NBA's counsel neither objected to the computation of time at the August 22, 2003 hearing, nor spoke up to say "a week from Monday or Tuesday" was too short for proper notice under the rule. The trial court made it clear that the deposition needed to take place expeditiously because of the approaching trial date. In light of this, Marlyn's counsel properly noticed the deposition with at least ten calendar days' notice. After receiving the August 22, 2003 notice, NBA's counsel never asked the court to clarify the method of computation of the ten days, sought reconsideration, or moved for a protective order. NBA's counsel sent a letter to Marlyn on August 27, 2003 stating that Beatty would not appear for his deposition, but never replied to Marlyn's letters or telephone messages requesting discussion about scheduling the deposition. Neither NBA's counsel nor Beatty appeared for the deposition scheduled on September 3, 2003. It was not until September 25, 2003 that NBA argued that the trial court's computation of the ten days' notice was inaccurate.

¶ 25 Given that the trial court ordered the deposition to take place and trial was rapidly approaching, NBA could not just ignore the notice of deposition because of alleged technical defects. NBA's failure to seek clarification from the court or take some other affirmative action to resolve the problems of timely deposing its witnesses effectively constituted a failure to obey the court's order. The trial court properly considered it so.

¶ 26 Therefore, we hold that counsel properly noticed the deposition and the trial court acted within its discretion in imposing sanctions for failure to appear.

### B. Order for Beatty Deposition to Take Place in Arizona

¶ 27 NBA also argues that the trial court lacked authority to order Beatty, a Missouri resident, to be deposed in Arizona. NBA's counsel did not object to taking the deposition in Arizona at any time during the court proceedings or in the correspondence preceding the date scheduled for the deposition. Because NBA did not object, we will not address on appeal the issue of the trial court's authority. In any event, NBA's real complaint is that the trial court imposed a sanction for NBA's failure to comply with an order that NBA now argues was ineffective.

¶ 28 As we discussed above, a party cannot simply ignore an order of the court until the time for compliance passes and then argue in defense that the order was ineffective. If a party believes that a defect exists, it is incumbent on the party to approach the court for clarification or reconsideration. This is particularly true when time is short because of an approaching trial or other deadline. Therefore, NBA's argument that the trial court could not order the deposition to take place in Arizona was not properly asserted as a defense to the imposition of sanctions for failing to follow the court's order.

### C. Sanctions Dismissing Complaint With Prejudice

¶ 29 NBA also asserts on appeal that the trial court erred when it imposed sanctions emasculating its case and causing the case to be dismissed with prejudice. We find that the sanctions did not preclude NBA from making any claim. Without Beatty's and Bays' testimony, NBA was only prevented from establishing its damages claim based on its percentage of money earned through successful product sales. NBA was not precluded from establishing its claim that it was entitled to $100,000.00 for the agreement between the parties of the $5,000.00 management fee each month, beginning on October 1, 1998. NBA, not the trial court, suggested that simply entering judgment against it might be the better option because it could no longer seek certain damages. Therefore, we reject NBA's claim that the trial court improperly dismissed the Complaint.

¶ 30 For the first time on appeal, NBA asserts that the trial court abused its discretion when it failed to hold an evidentiary hearing prior to its dismissal of the claim to determine whether NBA's failure to follow a court order and cooperate with discovery was the NBA's counsel's fault or Beatty's fault. We will not address issues raised for the first time on appeal. *State v. Fagnant,* 176 Ariz. 218, 219, 860 P.2d 485, 486 (1993).

### D. Marlyn's Awards of Attorneys' Fees and Costs

¶ 31 NBA argues that the trial court abused its discretion when it awarded attorneys' fees and costs to Marlyn, contending that the awards, as well as the claims for costs and fees on the merits, were untimely. NBA argues that the signed order filed October 13, 2003 resolved all issues of the case so that any fee awards could only be accomplished by amending the judgment pursuant to Rule 59(*l*). Marlyn counters that Rule 54(b) makes attorneys' fee claims separate claims that may be litigated after judgment has been entered on the merits.

¶ 32 Although NBA asked the trial court to apply Rule 54(b) to its order and treated the October 13 order as a final, appealable judgment, it argues that the October 13 order was not a Rule 54(b) judgment because it does not contain the proper certification language. NBA's argument is difficult to follow, but it appears to argue that because the October 13 order did not contain specific reference to Rule 54(b) it was a final judgment terminating the case in the trial court. Therefore, NBA argues, any attorneys' fee claim cannot be separately and later considered because the trial court no longer had jurisdiction over the case and the only way fees could be awarded was by filing a Rule 59(*l*) motion to amend the judgment. In support of its argument it cites *Mark Lighting Fixture Co. v. General Electric Supply Co.,* 155 Ariz. 27, 745 P.2d 85 (1987), and *Monti v. Monti,* 186 Ariz. 432, 924 P.2d 122 (App.1996). These cases were decided before the most recent amendments to the rules governing judgments and the timing of claims for attorneys' fees. We conclude that

the current rules are directly at odds with NBA's argument.

¶ 33 Arizona Rule of Civil Procedure 54(b) currently states:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. For purpose of this subsection, a claim for attorneys' fees may be considered a separate claim from the related judgment regarding the merits of a cause.

Ariz. R. Civ. P. 54(b). Rule 54(b) was amended in 1999, in part for the purpose of allowing a trial court to expressly enter a judgment on the merits that may immediately be appealed while retaining jurisdiction over an attorneys' fees issue for later resolution. Ariz. R. Civ. P. 54(b) note (State Bar Committee Notes 1999 Amendments).

¶ 34 Other 1999 amendments also affected claims for fees. Rule 54(g), which governs the timing and method of claiming fees, was "amended expressly to provide that the rule does not apply to attorneys' fees and costs sought as sanctions pursuant to statute or rule. The amendment was adopted to avoid confusion of the type discussed in *Monti v. Monti*, 186 Ariz. 432, 924 P.2d 122 (App. 1996)." Ariz. R. Civ. P. 54(g) note (State Bar Committee Notes 1999 Amendments).

¶ 35 Current Rule 58(g) was amended to provide that "a judgment shall not be entered until claims for attorneys' fees have been resolved and are addressed in the judg-

ment." As explained in the State Bar Committee Notes, the rule

> was amended to provide that a judgment normally should not be entered until all attorneys' fees issues have been resolved and can be addressed in the judgment. This procedure will allow all issues to be addressed efficiently in a single appeal, and will avoid the problem identified in *Mark Lighting Fixture Co. v. General Electric Supply Co.*, 155 Ariz. 27, 745 P.2d 85 (1987) (holding that the trial court lacked jurisdiction to award attorneys' fees after judgment absent a timely motion to alter or amend judgment). In the rare case in which a judgment on the merits of a cause would be appropriate prior to resolution of attorneys' fees, the trial court may certify the entry of a "merits" judgment under Rule 54(b).

Rule 58(g) note (State Bar Committee Notes 1999 Amendments). NBA makes no attempt to explain why these amended rules do not render *Mark Lighting* and *Monti* inapplicable to this case.

¶ 36 NBA's fundamental mistake appears to be its belief that Rule 54(b) is only applicable when the trial court expressly certifies a ruling for immediate appeal. It seems to believe that if there is no Rule 54(b) certification the subsection has no effect and a signed order will be effective as a final judgment even when claims for attorneys' fees have not been resolved. This interpretation is directly contrary to the language of the subsection, particularly when considered with amended Rule 58(g). The first sentence of Rule 54(b) prescribes what is necessary to make an order adjudicating less than all claims final. But if the first sentence does not apply, the second sentence is triggered and there will be no final, appealable judgment until all claims involving all parties are adjudicated. The third sentence specifically makes a claim for attorneys' fees a separate claim for purposes of Rule 54(b), so the claims that must be adjudicated before the case is final include fee claims. Thus, as provided for in Rule 58(g), except in the rare case when a judgment on the merits is appropriate prior to the resolution of attorneys' fees, a final, appealable judgment shall not be entered until

attorneys' fees are resolved and addressed in the judgment. If this procedure is followed and understood, parties will avoid what the parties in this case have gone through—the expense and time incurred in preparing multiple appeals of what is actually a single case.

¶ 37 Under the circumstances of this case, we do not need to decide whether the October 13, 2003 order qualified as a Rule 54(b) judgment. Either way NBA's objections to the attorneys' fee awards are without merit. If the trial court had certified the October 13 order under Rule 54(b), it plainly could have later ruled on the separate claim for attorneys' fees. If the order was not certified under Rule 54(b), Marlyn's two claims for attorneys' fees, one raised in Marlyn's answer and in open court and the other awarded as a sanction, remained to be adjudicated because the October 13 order was not a final judgment. Without Rule 54(b) certification, the case only becomes final when a judgment or judgments are entered adjudicating all the claims, including fee claims, and the rights and liabilities of all parties. *See Hill v. City of Phoenix*, 193 Ariz. 570, 573, ¶ 15, 975 P.2d 700, 703 (1999) ("holding that in the absence of a Rule 54(b) certification, all judgments become effective upon entry of the one last in time which disposes of the last claim"). In either circumstance, we reject NBA's claim that the trial court lacked the authority to enter the two attorneys' fee awards.

■ ¶ 38 NBA also argues that the attorneys' fees claim for defending the merits was untimely because Marlyn did not submit it within twenty days of the decision on the merits, as required by Rule 54(g), and the claim for costs was untimely because Marlyn did not submit it within ten days as required by A.R.S. § 12–346 and Rule 54(f). Under each of these provisions, the trial court has the discretion to extend the time for filing the claims. Rule 54(f) and § 12–346 provide for an extension "for good cause shown." NBA raised these same objections before the

trial court, which then granted the claims, noting "[g]ood cause appearing." NBA argues this finding is insufficient, but we have previously held that a trial judge does not abuse its discretion by summarily overruling objections to an untimely statement of costs. *Brant v. Hargrove*, 129 Ariz. 475, 484, 632 P.2d 978, 987 (App.1981). In this case, the trial court ruled upon the merits in October and all fee and cost claims were filed and ruled upon by the end of December. Under these circumstances, the trial court did not abuse its discretion in overruling NBA's objections to the timeliness of the fee and cost claims.

### E. Attorneys' Fees and Costs on Appeal

■ ¶ 39 Finally, both NBA and Marlyn request that we award attorneys' fees pursuant to A.R.S. § 12–341.01(A), which provides the court with the authority to award attorneys' fees to the successful party arising out of a contract action, and Rule 21, Arizona Rules of Civil Appellate Procedure. In the exercise of our discretion, we award reasonable attorneys' fees and costs to Marlyn upon its compliance with Arizona Rules of Civil Appellate Procedure 21(c).

### CONCLUSION

¶ 40 For the foregoing reasons, we affirm the trial court and award attorneys' fees and costs to Marlyn on appeal.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and G. MURRAY SNOW, Judge.