390 P.3d 1226

**In re the Marriage of**

**Scott HENDERSON,
Petitioner/Appellant,**

v.

**Suzanne Ruth HENDERSON,
Respondent/Appellee,**

**and**

**The State of Arizona ex rel. the Department of Economic Security,
Respondent/Intervenor.**

Nos. 2 CA–CV 2015–0193 and 2 CA–CV 2016–0054 (Consolidated)

Court of Appeals of Arizona,
Division 2.

Filed February 28, 2017

Solyn & Lieberman, PLLC, Tucson, By Melissa Solyn and Scott Lieberman, Counsel for Petitioner/Appellant

Wyland Law, P.C., Tucson, By Dawn Wyland, Counsel for Respondent/Appellee

Mark Brnovich, Arizona Attorney General, By Carol A. Salvati, Assistant Attorney General, Phoenix, Counsel for Respondent/Intervenor

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Staring and Judge Miller concurred.

## OPINION

ESPINOSA, Judge:

¶ 1 Scott Henderson challenges the trial court's judgment and various rulings related to the registration and enforcement of a foreign support order. For the reasons that follow, we accept special action jurisdiction in part but deny relief, and affirm the trial court's determinations in full.

### Factual and Procedural Background

¶ 2 We view the facts in the light most favorable to sustaining the trial court's rulings. *Bell–Kilbourn v. Bell–Kilbourn*, 216 Ariz. 521, n.1, 169 P.3d 111, 112 n.1 (App. 2007). In 1999, Scott and Suzanne Henderson initiated marriage dissolution proceedings in Ontario, Canada and were divorced there in 2003. After entering a number of intermediate orders, the Superior Court of Justice, Family Court Branch in Brampton, Ontario, issued a "final" order in January 2009 finding Scott was more than $360,000 CAD [1] in arrears on his child support obligations and imposing monthly support payments of

---

1. We distinguish between currencies as follows: CAD for Canadian Dollars, USD for United States Dollars, and HKD for Hong Kong Dollars.

$9,774 CAD.[2] Expressing some concern that the court had incomplete information on Scott's income, it noted that its order was "subject to ... variation" pending Scott's purge of "all existing contempts" and satisfaction of disclosure requirements.

¶3 The Canadian Family Responsibility Office[3] (FRO) attempted to register the order in Hong Kong, where Scott's employer was headquartered,[4] but was ultimately unsuccessful. The 2009 order was registered in California in 2011, but Scott left the jurisdiction before the judgment could be enforced. Scott remarried in December 2011, and in March 2012 purchased a home in Tucson, Arizona with his new wife. Pursuant to the Arizona Uniform Interstate Family Support Act (UIFSA), A.R.S. §§ 25–1201 to 25–1362, Suzanne sought registration and enforcement of the 2009 Canadian order in Pima County. The Pima County Superior Court (trial court) confirmed the registration of the Canadian order in May 2013, over Scott's objections, but stayed enforcement pending hearings to resolve Scott's claims of fraud, modification, and partial payment.

¶4 While Suzanne was seeking to register the Canadian order, Scott applied for its modification in the Canadian court. The Canadian court, however, concluded Scott's modification attempt was "a complete abuse of the process of th[e] Court" and "a transparent effort ... to delay the enforcement of th[e Canadian] Court's Orders in Arizona," and struck his "Motion to Change." In July 2013, during the pendency of the enforcement proceedings in Arizona, Suzanne obtained a "*Mareva* Injunction"[5] from The High Court of the Hong Kong Special Administrative Region, Court of First Instance, resulting in a "worldwide" freeze of his assets.[6] Although the *Mareva* injunction pro-

hibited Suzanne from initiating legal proceedings without leave of the Hong Kong court, it specifically excepted "all necessary steps (including court proceedings) to seek registration and enforcement of the [Canadian Support] Order in Arizona, USA."

¶5 Scott challenged enforcement of the Canadian support order in Arizona at numerous hearings throughout 2014, but the trial court ultimately determined that the order was enforceable in Arizona. After registration was confirmed, Suzanne filed a petition seeking a contempt finding and requesting an arrears calculation. The court held contempt and arrearages hearings in April and June 2015, found Scott in contempt, and entered a $755,313.73 USD judgment against him. The court additionally set forth a number of conditions to purge his contempt and awarded Suzanne attorney fees. Scott appealed from that judgment and related orders.[7]

¶6 During the pendency of the appeal, Suzanne filed a motion for an expedited hearing, requested an order finding Scott in contempt of court for failing to comply with the court's July 31, 2015 order, and sought enforcement of that order. The trial court granted the expedited hearing and denied Scott's request for a continuance. After the hearing, which was held in advance of a hearing before the Hong Kong court regarding the *Mareva* Injunction, and which Scott failed to attend, the trial court issued an income-withholding order and enjoined him from accessing his income and his retirement account. Scott filed a motion for a new trial, which the court denied, and a motion for release of the injunction, clarification, and stay of the Arizona proceedings, which the court also denied. Scott appealed from the trial court's order denying his requests,

---

2. Scott's monthly support obligations included $4,915 CAD in child support, $1,387 CAD in "extraordinary expenses," and $3,472 CAD in spousal support.

3. The Family Responsibility Office is the government agency in Ontario charged with collecting, distributing, and enforcing child and spousal support payments.

4. Scott is an airline pilot employed by Cathay Pacific Airlines.

5. See *Mareva Compania Naviera SA v. International Bulkcarriers SA*, [1975] 2 Lloyd's Rep. 509 (Eng. C.A.).

6. The injunction exempted weekly allowances of $3,500 HKD for Scott's living expenses and $50,000 HKD for legal services.

7. Scott's appeal of the registration and confirmation of the 2009 Canadian order is assigned No. 2 CA–CV 2015–0193.

which we have consolidated with his initial appeal.[8]

¶ 7 After Scott filed his opening brief in the consolidated appeals, Suzanne filed a motion to dismiss for lack of subject matter jurisdiction. We granted that motion in part, dismissing Scott's claims with respect to the contempt finding, imposition of purge conditions and attorney fees, and issues related to the trial court's denial of a request for a stay of the proceedings. We took under advisement whether to accept special-action jurisdiction to address those claims. Because Scott has no adequate remedy by appeal, in our discretion we exercise that jurisdiction. *See* Ariz. R.P. Spec. Act. 1(a); *McLaughlin v. Jones*, 240 Ariz. 560, ¶ 5, 382 P.3d 118, 120 (App. 2016); *Berry v. Superior Court*, 163 Ariz. 507, 508, 788 P.2d 1258, 1259 (App. 1989) (contempt finding only reviewable by special action). We have direct appellate jurisdiction over Scott's objections to registration of the 2009 Canadian support order and subsequent arrearages judgment pursuant to A.R.S. § 12–2101(A)(1). Our jurisdiction over the denial of a motion for new trial is pursuant to § 12–2101(A)(5)(a), and jurisdiction to consider the trial court's refusal to dissolve the injunction is pursuant to § 12–2101(A)(5)(b). *See also* A.R.S. § 12–120.21(A)(1).

## Registration of Canadian Order and Arrears Judgment

¶ 8 Scott first argues the trial court erred in registering the 2009 Canadian support order and entering the $755,313.73 USD arrearages judgment because the underlying orders were "not final and are subject to variance." He maintains that the arrears amount "can and should be varied at a later date," relying on a provision of the Canadian Divorce Act that allows for retroactive variance of support orders. *See* Divorce Act,

R.S.C. 1985, c. 3, s. 17(1)(a) (2nd Supp.) (Can.). Suzanne counters that the possibility of a future modification "does not render the Arizona [j]udgment non-final," and argues that Scott's challenge to the Arizona judgment "is not ripe for review" until such time as the registered order is modified. Scott acknowledges he has thus far been unsuccessful in his attempts to modify the 2009 Canadian support order.

¶ 9 In 1996, Arizona enacted the Uniform Interstate Family Support Act (UIFSA), authorizing Arizona trial courts to register and enforce support orders issued in foreign jurisdictions.[9] *See* A.R.S. §§ 25–1201 to 25–1303; *see also* H. Summary of S.B. 1332, 46th Leg., 2d Reg. Sess. (Ariz. Apr. 28, 2004). Section 25–1304 of the Act, a choice-of-law provision, dictates that the law of the issuing foreign jurisdiction governs the nature, extent, and amount of payments, as well as the computation and payment of arrearages.

¶ 10 Section 17(a) of the Canadian Divorce Act allows a "court of competent jurisdiction" to "make an order varying, rescinding or suspending, prospectively or retroactively" either a support or custody order. R.S.C. 1985, c. 3, s. 17(1)(a). Thus, Scott is correct that his support order and arrearages determination may be retroactively modified or rescinded. As previously noted, the Canadian order registered in Arizona contains a handwritten provision that states the order is "subject to ... variation upon [Scott] purging all existing contempts, providing all answers to his undertakings, providing complete income disclosure, and reopening [the] pleadings."

¶ 11 That a support order is retroactively modifiable, however, is not a valid defense to the enforcement of the order. *See* § 25–1307 (enumerating defenses); *see also* Restatement (Third) of Foreign Relations Law of the United States § 486 cmt. b (1987) (rejecting

---

8.  Scott's second appeal is assigned No. 2 CA–CV 2016–0054.

9.  The trial court determined that Ontario's Family Responsibility and Support Arrears Enforcement Act, R.S.O., 1996, c. 31 (Can.), enacted in 1996, "established procedures for enforcement of support orders ... substantially similar to Arizona procedures," thereby meeting the definition of "foreign country" set forth in the UIFSA.

§ 25–1202(5)(c); *see also* Notice of Declaration of Foreign Countries as Reciprocating Countries for Enforcement of Family Support Obligation, 67 Fed. Reg. 71605–01 (U.S. Dep't of State Dec. 2, 2002) (designating Ontario as a foreign reciprocating Canadian province). The parties do not contest that Ontario is a "foreign country" under the Arizona UIFSA.

the view that support orders are not final, and therefore unenforceable, because they are commonly modified for changes in circumstances). Arizona's UIFSA allows a "foreign support order" to be "registered in this state for enforcement," § 25–1301, and defines "[s]upport order" as a "judgment, decree, order, decision, or directive, whether temporary, final or subject to modification, issued in a ... foreign country for the benefit of a child," § 25–1202(29). Finding no statutory requirement that a support order must be "final" or unmodifiable as Scott interprets the term in order to be enforceable, we reject his arguments to the contrary. *See Stambaugh v. Butler*, 240 Ariz. 353, ¶ 23, 379 P.3d 250, 256 (App. 2016) (where statutory language plain and unambiguous, it is applied as written).

■ ¶ 12 We also find no support for Scott's characterization of the judgment entered as a "permanent arrearage judgment." As previously noted, Canadian law provides for retroactive modification or rescission of support payments. If Scott were to obtain a modifying order, he could request that it be registered in this state pursuant to the procedures set forth in §§ 25–1301 to 25–1316. However, because there was no modifying order at the time the trial court entered the orders from which this appeal is taken, we do not address the hypothetical question of what effect such an order would have on the enforceability of an existing arrearages judgment. *Babbitt v. Asta*, 25 Ariz.App. 547, 549, 545 P.2d 58, 60 (1976) (appellate court will not construe a statute on basis of hypothetical conditions not yet occurred).

■ ¶ 13 Scott additionally contends the trial court lacked jurisdiction to enter a judgment for arrearages accrued after his children had reached the age of majority. Because this argument is raised for the first time on appeal, we would normally find it waived. *See Nat'l Broker Assocs., Inc. v. Marlyn Nutraceuticals, Inc.*, 211 Ariz. 210, ¶ 30, 119 P.3d 477, 483 (App. 2005). A court's subject matter jurisdiction, however, may be challenged at any time. *Glover v. Glover*, 231 Ariz. 1, ¶ 8, 289 P.3d 12, 14 (App. 2012). Regardless, Scott's argument lacks merit.

¶ 14 First, we find unavailing Scott's reliance on *Steiner v. Steiner*, in which this court concluded the trial court was without jurisdiction to enforce a contract that required a parent to continue to pay child support after the couple's minor child had turned eighteen. 179 Ariz. 606, 607, 610, 880 P.2d 1152, 1153, 1156 (App. 1994). As previously discussed, the "nature, extent, amount, and duration of current payments," as well as the arrearages, is determined by Canadian law. § 25–1304(A). Although it is undisputed that Scott and Suzanne's two daughters had reached the age of majority when the trial court entered its orders, Canadian law allows a court to order a parent to make continuing support payments for adult children obtaining post-secondary education. *See* Divorce Act, R.S.C. 1985, c. 3, s. 2(1) (2nd Supp.) (Can.) (defining "child of the marriage" as "a child of two spouses or former spouses who, at the material time, ... is the age of majority or over and under their charge but unable, by reason of illness, disability or other cause, to withdraw from their charge or to obtain the necessaries of life"); *Jackson v. Jackson*, [1973] S.C.R. 205 paras. 28–29 (Can.) (interpreting "other cause" to mean children attending post-secondary education). Even though the ongoing support ordered in 2009 may not be appropriate for Scott's now adult children, *see, e.g., Park v. Thompson*, (2005) 77 O.R. 3d 601 (Can. Ont. C.A.) (suggesting different standards apply to minor and adult children), his remedy is to seek a retroactive variance from the Canadian courts.

¶ 15 Second, Arizona courts do not have authority to modify the 2009 support order, *see* §§ 25–1221(B), 25–1310, 25–1311, 25–1313, and Scott's collateral attack on the registered order is inappropriate in this forum, *cf. Duncan v. Progressive Preferred Ins. Co. ex rel. Estate of Pop*, 228 Ariz. 3, ¶ 13, 261 P.3d 778, 782 (App. 2011). Accordingly, the trial court did not lack jurisdiction to enforce the Canadian support obligations challenged here.

### Special–Action Jurisdiction: Contempt, Purge Conditions, Attorney Fees

■ ¶ 16 Scott next challenges the Arizona trial court's order finding him in contempt

and setting forth conditions for purging his contempt. Based on our lack of jurisdiction to review contempt orders on direct review, we previously granted Suzanne's motion to dismiss the appeal insofar as it related to that order but requested briefing on whether we should exercise our discretion to accept special-action jurisdiction to review it. Urging this court to accept jurisdiction, Scott correctly notes he "has no other remedy for review" of the contempt finding. *See State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, ¶ 18, 66 P.3d 70, 73 (App. 2003) (court of appeals lacks jurisdiction over appeal from civil contempt adjudication). Suzanne objects, citing, inter alia, the many delays in this case and Scott's "willful disregard of court orders." Because some of the delays have been occasioned by both parties, important issues are raised—both legal and factual—and because Scott has no other appeal on these issues, in our discretion we accept special-action jurisdiction. *See Berry*, 163 Ariz. at 508, 788 P.2d at 1259 (contempt finding reviewable only by special action). We review a trial court's contempt finding and imposition of sanctions for an abuse of discretion. *Lund v. Donahoe*, 227 Ariz. 572, ¶ 19, 261 P.3d 456, 462 (App. 2011) (sanctions); *Stoddard v. Donahoe*, 224 Ariz. 152, ¶ 9, 228 P.3d 144, 146 (App. 2010) (contempt).

¶ 17 In an under-advisement ruling in July 2015, the trial court found that "on at least three separate occasions" Scott "had access to income and/or assets to pay his child support and chose not to do so," and found him "in willful civil contempt." Specifically, the court found that after the 2009 Canadian support order had been entered, Scott had accessed his income for several months in early 2014, and had liquidated approximately $80,000 from an "E–Trade" account.[10] Despite this access to funds, the court noted that Scott had ignored his support obligations and instead made an almost $500,000 USD down payment for a new home in Arizona. It additionally cited portions of a transcript from the April 2015 hearing before the Hong Kong court that shows Scott rejected the court's offer to release his full income provided he use it to pay the total amount of support owed each month to the FRO, and rejected his argument that the *Mareva* Injunction prevented him from making support payments.

¶ 18 Scott now points to evidence presented at various evidentiary hearings on Suzanne's contempt motion indicating a lack of willful defiance that he claims "the trial court failed to consider." He does not, however, contradict the court's factual findings, nor does he otherwise support his allegation that the court failed to consider his evidence. *Cf. Fuentes v. Fuentes*, 209 Ariz. 51, ¶ 18, 97 P.3d 876, 880–81 (App. 2004) (we presume trial court considers all evidence before it). We do not re-weigh evidence on appeal, and will affirm a trial court's ruling if substantial evidence supports it. *See Hurd v. Hurd*, 223 Ariz. 48, ¶ 16, 219 P.3d 258, 262 (App. 2009).

¶ 19 Although Scott did present evidence that he had partially complied with the orders, he has not explained how partial compliance excuses his failure to fully comply. Nor has he explained how he was "unable" to fully comply with his monthly support obligations and still put $500,000 USD down on a new home. In light of the uncontroverted evidence he had failed to fully comply, we cannot conclude the trial court abused its discretion in finding Scott in willful contempt of court orders.

¶ 20 To the extent Scott argues the trial court committed legal error by relying on *Tande v. Bongiovanni*, 142 Ariz. 120, 123, 688 P.2d 1012, 1015 (1984), we disagree. In *Tande*, our supreme court held that contempt findings are appropriate in support proceedings where one parent has a duty to support his or her children even if the children are no longer minors. *Id.* Having rejected Scott's argument that the trial court was without jurisdiction to impose support obligations for his adult children because such obligations are clearly allowed under Canadian law, we find no error in the court's reliance on *Tande*.

---

**10.** A retirement account that Scott closed and transferred to his new wife after the *Mareva* Injunction had been issued.

¶ 21 Scott additionally challenges the purge-of-contempt conditions imposed, arguing "the trial court erred in setting forth various purge conditions that [he] cannot comply with." In its July 2015 ruling, the court ordered that within sixty days Scott was "to do all that is necessary to access his income" encumbered by the *Mareva* Injunction and make monthly payments directly to the Canadian FRO. The court added that failure to satisfy the monthly support obligations could result in assignment to Suzanne of up to one-half the value of Scott's retirement fund, valued in March 2015 at nearly $1,000,000 USD.

¶ 22 Under A.R.S. § 12–864.01(C), a person found in contempt has the burden of proving by a preponderance of the evidence that he is unable to purge the contempt as prescribed. Here, Scott argues there was no evidence he had the ability to access his income or any of his assets which had been frozen by the *Mareva* Injunction. And, he maintains, the evidence was "clear" that if he paid $9,774 CAD per month to the FRO for ongoing support, he would be unable to pay his bills. But the trial court also heard evidence that Scott had access to nearly $1,000,000 USD in a retirement account, that he could have used it to make support payments, and he had recently paid nearly $500,000 USD as a down payment for his Arizona home. Again, in light of the uncontroverted evidence, we conclude Scott has not met his burden of showing he was unable to comply with the purge conditions imposed.

¶ 23 Finally, Scott argues the trial court abused its discretion in awarding Suzanne attorney fees and costs pursuant to A.R.S. §§ 25–324 and 25–1062.[11] *See In re Marriage of Robinson & Thiel*, 201 Ariz. 328, ¶ 20, 35 P.3d 89, 96 (App. 2001) (attorney fees award reviewed for abuse of discretion). In supporting the fee award, the court found

Scott's actions "contemptuous and taken to purposefully deny [Suzanne] from receiving support." Scott argues that his actions were not unreasonable and because the court did not have the "complete financial information" of the parties, it abused its discretion in awarding fees and costs. But his allegations that Suzanne earned more than she reported to the court are unsupported, and he relies on arguments that we have already rejected in this decision. He has not, therefore, sustained his burden of showing the trial court abused its discretion in awarding attorney fees and costs to Suzanne.

### Post–Appeal Rulings

### Motion for New Trial

¶ 24 After the trial court issued its July 2015 ruling and Scott had filed his notice of appeal, he filed a motion in which he argued that Suzanne was responsible for keeping the *Mareva* Injunction in place and requested a hearing to "explore a solution which w[ould] enable [him] to purge [his] Contempt of Court." The trial court denied his request, concluding it had been divested of jurisdiction upon Scott's filing of a notice of appeal. Suzanne subsequently requested an expedited contempt and enforcement hearing in advance of a hearing in Hong Kong to address the lifting of the *Mareva* Injunction. In her motion, Suzanne expressed concern that if Scott was able to satisfy his U.S. tax obligations, "he could move the money to another country where [his pension] cannot be accessed by American Orders." The court issued an order requiring Scott to appear, but allowed his appearance to be telephonic. Scott informed the court he would be in Asia at the time of the expedited enforcement hearing, and requested a continuance, which the court denied. After Scott failed to appear at the hearing by telephone or otherwise, the court issued injunctions

---

**11.** Scott does not challenge the application of these fee-shifting statutes to proceedings initiated under the Arizona UIFSA, and has therefore waived that issue by not raising it. *See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167, 920 P.2d 41, 47 (App. 1996) (issues not clearly raised in appellate brief waived). Moreover, even were we to conclude the trial court did commit legal error and thereby abused its

discretion by misapplying the fee-shifting statutes, *see Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, ¶ 27, 156 P.3d 1149, 1155 (App. 2007) (legal error constitutes abuse of discretion), attorney fees are awardable under UIFSA, *see* § 25–1253, and we will uphold a trial court's decision if correct for any reason, *In re Jerry C.*, 214 Ariz. 270, ¶ 6, 151 P.3d 553, 555 (App. 2007).

aimed at two of his accounts frozen by the *Mareva* Injunction, issued an income-withholding order, and directed that future support payments be made through the Arizona Clearinghouse.

¶ 25 Scott then filed a motion for a new trial, arguing: (1) he was not properly notified of the expedited hearing, (2) he should have been extended the "professional courtesy" of choosing a hearing date agreeable to both parties, and (3) his due process rights were violated when the hearing was conducted without him. We previously acknowledged direct review of the trial court's summary denial of Scott's motion for a new trial, which we now review for an abuse of discretion. *See Lopez v. Safeway Stores, Inc.*, 212 Ariz. 198, ¶ 29, 129 P.3d 487, 497 (App. 2006).

¶ 26 On appeal, Scott contends for the first time that the trial court lacked jurisdiction to modify an order under appeal, and argues the denial of his motion to continue and subsequent motion for new trial was an abuse of discretion. Suzanne responds that jurisdiction was appropriate because the expedited hearing addressed matters "in furtherance of the appeal," and argues that Scott has failed to sustain his burden of showing the trial court abused its discretion. We review independently the jurisdiction of a lower tribunal to make a ruling brought before us. *Danielson v. Evans*, 201 Ariz. 401, ¶ 36, 36 P.3d 749, 759 (App. 2001).

▮ ¶ 27 Under A.R.S. § 25–325(A), the pendency of an appeal does not divest the trial court of jurisdiction to execute and enforce a support order, *see Dyer v. Dyer*, 92 Ariz. 49, 51–52, 373 P.2d 360, 362 (1962), nor does it divest the court of jurisdiction to "issue orders in furtherance of the appeal," *In re Marriage of Flores & Martinez*, 231 Ariz. 18, ¶ 10, 289 P.3d 946, 949 (App. 2012). In *Castillo v. Industrial Commission*, this court acknowledged that the filing of a notice of appeal generally divests the trial court of jurisdiction, but we noted that this general principle is subject to many well-established exceptions, including that "the trial court in a civil proceeding retains jurisdiction pending the appeal to take such action as might be necessary to enforce its previously entered judgment." 21 Ariz.App. 465, 467, 471, 520

P.2d 1142, 1144, 1148 (1976), *citing Carp v. Superior Court*, 84 Ariz. 161, 164, 325 P.2d 413, 416 (1958).

¶ 28 In the orders at issue here, the trial court directed that Scott's support payments "first go through the State of Arizona Clearinghouse and then [be] distributed to the Canadian [FRO]," granted an income-withholding order, and ordered an "injunction against any funds held in the Fidelity ... and any HSBC account." These orders were clearly enforcement mechanisms for securing a judgment previously entered and the court had jurisdiction to enter them.

¶ 29 To the extent Scott argues the trial court abused its discretion in denying his motion for a new trial, his bare allegations and conclusory assertions are insufficient to meet his burden. *Cf. In re Aubuchon*, 233 Ariz. 62, ¶ 6, 309 P.3d 886, 888–89 (2013). He has not explained how the outcomes of the proceedings would have been any different had he participated, provides no evidence he was unable to attend the hearing telephonically, nor has he explained why he could not have retained local counsel to represent his interests at the hearing. *Id.* (finding waived arguments not supported by adequate explanation). Accordingly, Scott has failed to persuade us the trial court abused its discretion in denying his motion to continue or his motion for new trial.

## Injunctions

▮ ¶ 30 Scott next argues the trial court erred in "enjoining [him] from accessing any of his income or accounts" and "in refusing to lift the injunctions." After the Arizona trial court granted Suzanne's request to enjoin and encumber the Fidelity and HSBC accounts, the Hong Kong court entered an order releasing certain funds from the latter account upon payment of $187,053 CAD to the Canadian FRO. The released funds, however, had been constrained by the Arizona court injunctions. Scott thereafter filed an "emergency" motion for immediate release of the injunction and a joint motion for "clarification," noting inconsistencies in the Arizona and Hong Kong orders and arguing the injunction must be lifted so he could "pay his

living expenses and hire legal counsel." The court denied Scott's motions, finding no "emergency" that would warrant a lift of the orders or release of the injunction.

¶ 31 In the exercise of its discretion, a trial court may impose an equitable remedy that it deems appropriate, which we will not disturb absent a clear abuse of that discretion. *See Ahwatukee Custom Estates Mgmt. Ass'n, Inc., v. Turner*, 196 Ariz. 631, ¶¶ 5, 9, 2 P.3d 1276, 1279, 1280 (App. 2000). A court abuses its discretion when its ruling is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Torres ex rel. Torres v. N. Am. Van Lines, Inc.*, 135 Ariz. 35, 40, 658 P.2d 835, 840 (App. 1982).

¶ 32 Scott asserts that the trial court's conclusions "are without consideration of any of the evidence," and argues "[t]here is nothing equitable about the court enjoining [him] from utilizing even one penny of his income." Suzanne counters there is "no law or statute that requires the court to provide him with access to his income," and notes that Scott has presented no evidence that he was deprived of his basic needs. Scott responds that "it should go without saying" that without access to one's income, "providing for one's basic needs is likely to be a problem."

¶ 33 The trial court attempted to balance Suzanne's interest in ensuring Scott's compliance with court-ordered support payments with the burden imposed on Scott by limiting his access to funds. On the one hand, enjoining access to income is a severe measure for one engaged in legal battles in three jurisdictions. On the other hand, the court was presented with overwhelming evidence that Scott had generally failed to abide by court orders for nearly fifteen years. Courts in both Arizona and Canada had found him in contempt of court, and the latter issued a warrant for his arrest. And there was strong evidence Scott would be found in contempt in Hong Kong for violating the *Mareva* Injunction.[12] Moreover, by the end of March 2015, Scott had accrued support arrearages of nearly $1,000,000 CAD. As the Hong Kong

Court of First Instance noted, Scott has taken a "catch me if you can" attitude regarding the payment of his support obligations. Moreover, the Hong Kong court issued the *Mareva* Injunction in part because it found "a real risk of dissipation of assets." In light of Scott's history of non-compliance, we cannot say the trial court's refusal to lift the injunctions was manifestly unreasonable or based on untenable grounds. *See Torres*, 135 Ariz. at 40, 658 P.2d at 840.

**Stay of the Arizona Proceedings**

¶ 34 Lastly, Scott challenges the trial court's denial of his request for a stay of the Arizona proceedings, arguing he is unjustly "being forced to comply with repeated hearings in two different jurisdictions on different continents dealing with the same subject matter." We lack appellate jurisdiction over this issue but consider whether to address it under our special-action jurisdiction. *See Catalina Foothills Unified Sch. Dist. No. 16 v. La Paloma Prop. Owners Ass'n, Inc.*, 229 Ariz. 525, ¶ 20, 278 P.3d 303, 309 (App. 2012). Suzanne points out that Scott's claim was rendered moot when the *Mareva* Injunction was lifted, which Scott has conceded in his reply brief. Because any issue related to the trial court's denial of Scott's stay request is now moot, we decline to exercise our special-action jurisdiction to address his claim.

**Attorney Fees**

¶ 35 Suzanne has filed a cross-appeal alleging she is "entitled to an award of attorney's fees and costs for all matters [in the trial court] pending during this appeal." But she has provided no legal authority for such an award, nor has she provided any citations to the record to support her factual assertions. Accordingly, we find her claim waived. *See* Ariz. R. Civ. App. P. 13; *In re Aubuchon*, 233 Ariz. 62, ¶ 6, 309 P.3d at 888–89.

¶ 36 Both parties request attorney fees on appeal, alleging unreasonable positions taken by the other party, and have cited A.R.S. §§ 25–324, 25–1062, 12–341, and

---

12.  Scott was subsequently found in contempt of the Hong Kong court and was sentenced to three months' imprisonment there.

12–341.01 as the basis for the award. Section 25–1062 is a provision of the Uniform Child Custody Jurisdiction and Enforcement Act, which is inapplicable here, and § 12–341.01 allows for recovery of attorney fees in any contested action "arising out of a contract," thus it, too, is inapplicable. Section 25–324 allows for fee shifting for "costs and expenses of maintaining or defending any proceeding under . . . chapter [3 or] 4, article 1" of title 25, but Arizona's UIFSA is codified in chapter 9. However, because the UIFSA specifically provides for an assessment of "reasonable attorney fees" in favor of a prevailing obligee, A.R.S. § 25–1253(B), and because Scott has utilized the appeals process to avoid and delay paying a valid judgment, in our discretion we award Suzanne her reasonable attorney fees. *See* § 25–1253(C) (tribunal shall order payment of reasonable costs and fees where hearing requested primarily for delay); *see also* Ariz. R. Civ. App. P. 21(a)(2) (appellate court *may* decline to award fees for failure to specifically state the statute, rule, or other authority for an attorney fee award) (emphasis added). As the prevailing party on appeal, Suzanne is entitled to recover her costs pursuant to § 12–341, contingent upon compliance with Rule 21, Ariz. R. Civ. App. P.

## Disposition

¶ 37 For the foregoing reasons, the trial court's registration of the 2009 Canadian support order and judgment of support arrearages are affirmed. We accept special-action jurisdiction to address Scott's challenges to the court's subsequent contempt order, imposition of purge conditions, and award of attorney fees, but deny relief. We affirm the trial court's denial of the motion for a new trial, and uphold the enforcement measures relating to securing assets for payment. Finally, we decline special-action jurisdiction to consider Scott's mooted stay request and grant Suzanne's request for attorney fees and costs on appeal.